

MAILING ADDRESS
IDAHO REAL ESTATE COMMISSION
PO BOX 83720
BOISE ID 83720-0077
WEB SITE: http://www2.state.id.us/irec

**STATE OF IDAHO**
**REAL ESTATE COMMISSION**

OFFICE & EXPRESS MAIL ADDRESS
633 N 4TH ST
BOISE ID 83702
TEL: (208) 334-3285; FAX: (208) 334-2050
TRS (TELECOMMUNICATIONS
RELAY SYSTEM) 1 800 377-3529

October 26, 1999

JON ADAMSON
REALTY CENTER
4406 QUAIL POINT CT
BOISE ID 83703

Dear Mr. Adamson:

Enclosed is a copy of a "Verified Complaint" that has been filed against you and one of your prior licensees, Mr. Jerel Adamson, by Mr. Douglas Stewart and Ms. Kelle Watkins.

This transaction appears to have been a part of your "Homes for Everyone" program. The Swords were the "needs family" and Stewart & Watkins were the "wealth partners."

We realize that there is more than one side to every problem; therefore, prior to our making a judgement about this matter, would you please send us a **written statement** concerning this situation along with the following:

1. I understand that you were the listing and selling office in this transaction.

2. Did you have a marketing agreement for this property with Stewart and Watkins? If yes, please provide a copy. If not, please explain.

3. Did you discuss agency with either of the principals in this transaction? Please send a copy of the Blue Brochure receipt for each party.

4. Did you offer agency to the Swords? Please explain?

5. How did the Swords get involved with "Homes for Everyone?"

6. In what order did the Swords go through the program process--i.e. seminar, pre-qualify, locate a property?

R.E. Com pecoud
up.

> **EXHIBIT H**

EQUAL OPPORTUNITY EMPLOYER

7.  Stewart/Watkins claim that you told them that you thoroughly checked the financial ability of the "Needs Families" prior to allowing them to move into the property. They alleged that you told them you paid Young Mortgage $120 to check the Sword's financial background. Please explain. Please send copies of those documents.

8.  In a telephone conversation with you October 22, 1999, you stated that you paid Tressa Johns directly as the "Plan Underwriter" to complete a credit check for the "Needs Family." You stated that you did not pay Young Mortgage for these services. Please provide an outline of her responsibilities for these services including the steps and checks she was supposed to make. Please provide a copy of the 1099 or W-2.

9.  I am enclosing a copy of a letter from Tressa Johns to the Swords. It appears that this document has been completed for the benefit of the "Wealth Partner." Is that a true statement?

10. The letter referenced in 8 above is written on Young Mortgage letter head. The letter begins, "We are giving you a pre-qual letter on you getting the collections cleaned on your existing accounts and getting the taxes cleared up...". Was this letter from the Pro Foundation or from Young Mortgage?

11. Stewart/Watkins also stated that had you contacted the Sword's landlord you would have found that they were being evicted. Did you check with H&H Property Management concerning the Swords. If not, why not?

12. Were Stewarts' and Watkins' informed as to the real financial qualifications of the Swords? By whom?

13. I have also enclosed a copy of an Exclusive Buyer Representation Agreement which appears to have been signed by Jerry and Stewart/Watkins. Do you believe that you represented them properly?

14. Jerry has previously stated that when the Swords did not pay their original rent payment, after they had moved into the Lemhi St. property, he paid it out of his own pocket. Did you have the Swords sign a promissory note for this rent payment? Please provide a copy.

Adamson
Page 3
October 26, 1999

> Were Stewarts and Watkins aware of these facts. If not, why not? Do
> you think that information is something that should have been
> disclosed to your clients?

We also request that your reply contain copies of any other pertinent documents that you wish to
become a part of this investigation.

By initiating this action, this office makes no assumption about the truth or validity of any statements
contained in the complaint.

In order to resolve this matter as soon as possible, please send your response by November 9, 1999.
If you have any questions concerning the above, please call me at (208) 334-3285, ext 236.

Sincerely,

Ray Bixler CREI
Investigator

RB:jn

Enc. "Verified Complaint" and brochure
     Copy of letter from Young Mortgage to Sword.

IDAHO REAL ESTATE COMMISSION
PO ~
BOI ~
OF ~ EXPRESS MAIL ADDRESS
~ N ~ ST
~OI~ ID 83702
P~ONE (208) 334-3285
T~S (TELECOMMUNICATIONS RELAY ~STEM) 1 800 377-3529



**IDAHO REAL ESTATE COMMISSION**

RECEIVED

SEP 2 9 1999    No. 1566

IDAHO REAL ESTATE COMMISSION

REE-4-3
Rev 5/98

# VERIFIED COMPLAINT FORM

**INSTRUCTIONS:** Please type or print clearly in pen and ink. Complete all applicable sections of this form fully and accurately. Attach legible copies of contracts and all other documents relating to your complaint. You should provide all information which you know or can discover with reasonable investigation. For assistance in completing or submitting this complaint, contact the Idaho Real Estate Commission. If more space is needed, attach extra sheets.

**PLEASE NOTE:** The Idaho Real Estate Commission regulates real estate licensees. The Commission is not empowered to enforce, interpret, modify, rescind or cancel listing agreements, purchase and sale agreements or any other contract; or to order the return of earnest money, award damages, settle real estate commission fee disputes or otherwise settle claims.

The Idaho Real Estate Commission's jurisdiction extends only to potential disciplinary actions where violations of the Idaho License Law and Commission Administrative Rules are found. The Idaho License Law does not authorize the Idaho Real Estate Commission to compel the payment of money or to render a monetary judgment in your favor. Such an action falls within the jurisdiction of the civil courts.

## I. INFORMATION ABOUT PERSON(S) FILING COMPLAINT

Name(s)  STEWART / WATKINS (Last)    A. KEUE (First)    DOUGLAS E (Middle)

Address  5960 N LINDER RD

City, State and Zip Code  MERIDIAN IO 83642

Telephone (Home)  208 888-7334

Occupations(s)  BODYMAN + COUNSELOR

Were you a buyer/seller/or real estate agent?  BUYER

## II. INFORMATION ABOUT BROKER(S) AND/OR SALESPERSON(S) INVOLVED IN COMPLAINT

1.  Name  REALTY CENTER, REAL PRO FOUNDATION, JON ADAMSON AND JERRY ADAMSON

License type (Check one) ☒ Broker  ☐ Associate Broker  ☒ Salesperson

Who did they represent?  REALTY CENTER + REAL PRO FOUNDATION ,  BUYER

Address  2419 W. STATE   BOISE IO 83702

Telephone  208-343-8181    208-343-7186    208-343-7186

Firm name  REALTY CENTER

Address  4406 W. QUAIL PT  BOISE IO. 83703

Telephone  343-7186    Responsible broker  JON ADAMSON

Attorney's name and address

**Turn To Other Side**

2. Name _____

License type (Check one) ☐ Broker ☐ Associate Broker ☐ Salesperson

Who did they represent? _____

Address _____

Telephone _____

Firm name _____

Address _____

Telephone _____ Responsible broker _____

Attorney's name and address _____

## III. GENERAL INFORMATION ABOUT COMPLAINT

1. Type of real estate transaction: (check one)

   ☒ Residential ☐ Commercial ☐ Industrial ☐ Timeshare ☐ Bare Land ☒ Lease Option

   ☐ Other (describe) _INVESTMENT PURCHASE W/ INTERIM LEASE AND FUTURE PURCHASE_

2. Dates(s) of transaction(s) _6-4-99_

3. If known, state specific law or rule violations you are alleging:

   _NEARLY EVERY LINE OF "DUTIES TO A CLIENT" OF OUR_
   _EXCLUSIVE BUYER REPRESENTATION AGREEMENT_

4. I ☒ have ☐ have not (check one) contacted the persons complained about and attempted to resolve this matter. Persons and dates contacted.

   _JON ADAMSON 8-16 - 8-17-99   LINDA ADAMSON, JERRI ADAMSON_
   _ASHLEY SEYMOR 8-31-99  LETTERS TO ALL INVOLVED 9-1-99 AND 9-7-99_

5. I ☐ have ☒ have not (check one) retained an attorney to assist in resolving this or a related matter.

   Attorney's name _____ Telephone _____

   Attorney's address _WE DID SEE BARRY PETERS TO REVIEW DOCUMENTS_

   Should we contact your attorney about this matter? _AND ADVISE US E WHAT TO DO NEXT._
   _THIS COMPLAINT IS NEXT_

6. List the names of all other agencies and associates with whom you have or intend to file a complaint.

   _WE WILL WAIT TO SEE IF THIS COMPLAINT WILL_
   _GENERATE ANY MOVEMENT._

**Go On To Next Page**

7. This complaint involves the same or related matters which are the subject of a civil lawsuit which (check one)

   ☐ has been completed   ☐ has been filed in a court of law   ☐ will be filed in a court of law

   ☐ may be filed in a court of law   ☒ don't know

   Court name _____ Case # _____

   Court address _____

   Type of action _____

   Case status _____

8. Have other complaints about this or related matters been filed with the Commission?

   ☒ Yes   ☐ No   ☐ Don't know (check one)

   If yes, give details: WE ONLY KNOW THAT JERR. ADAMSON WAS
   FINED $3000⁰⁰ BUT DON'T KNOW WHY. SOURCE MR BIXLER
   _____
   _____
   _____
   _____
   _____

9. State specific factual allegations upon which your complaint is based. In your own words, state all of the facts which relate to your complaint, including dates and places. **Use extra paper if necessary.**

   _____ SEE ATTACHED _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

**Turn To Other Side**

2. Name_____

License type (Check one) ☐ Broker ☐ Associate Broker ☐ Salesperson

Who did they represent? _____

Address_____

Telephone_____

Firm name _____

Address_____

Telephone_____ Responsible broker _____

Attorney's name and address _____

## III. GENERAL INFORMATION ABOUT COMPLAINT

1. Type of real estate transaction: (check one)

   ☒ Residential ☐ Commercial ☐ Industrial ☐ Timeshare ☐ Bare Land ☒ Lease Option

   ☐ Other (describe) _INVESTMENT PURCHASE W/ INTERIM LEASE AND FUTURE PURCHASE_

2. Dates(s) of transaction(s) _6-4-99_

3. If known, state specific law or rule violations you are alleging:

   _NEARLY EVERY LINE OF DUTIES TO A CLIENT OF OUR_
   _EXCLUSIVE BUYER REPRESENTATION AGREEMENT_

4. I ☒ have ☐ have not (check one) contacted the persons complained about and attempted to resolve this matter. Persons and dates contacted.

   _JON ADAMSON 8-16 + 8-17-99  LINDA ADAMSON JERRY ADAMSON_
   _ASHLEY SEYMOOR 8-31-99 LETTERS TO ALL INVOLVED 9-1-99 AND 9-7-99_

5. I ☐ have ☒ have not (check one) retained an attorney to assist in resolving this or a related matter.

   Attorney's name_____ Telephone _____

   Attorney's address _WE DID SEE BARRY PETERS TO REVIEW DOCUMENTS_

   Should we contact your attorney about this matter? _AND ADVISE US @ WHAT TO DO NEXT._
   _THIS COMPLAINT IS NEXT!_

6. List the names of all other agencies and associates with whom you have or intend to file a complaint.

   _WE WILL WAIT TO SEE IF THIS COMPLAINT WILL_
   _GENERATE ANY MOVEMENT._

**Go On To Next Page**

10. I ☒ am ☐ am not (check or: willing to appear under oath as a witnes. ..ross-examination concerning the allegations made in the complaint. (The complainant's unwillingness to testify may be the basis for the Commission dismissing the complaint after its investigation and preliminary consideration.) If you are not willing to testify, state reason(s):

_____

_____

_____

_____

_____

11. Attach clear copies of **ALL** pertinent documents and papers which directly or indirectly relate to this complaint.

## IV.    VERIFICATION OF COMPLAINT

I understand a copy of this complaint will be given to any person or firm against whom I have complained. I (we), the complainant(s), declare under oath that the above is true to the best of my (our) knowledge.

Dated this 9-3-2 - 27TH day of _____Sept._____, 19 99 .

Complainant(s):

_Douglas Stewart_____    _Kyle Watters_____

State of _Idaho_____ )
                                          ) ss.
County of _Ada_____ )

Subscribed and sworn to before me this _____28th_____ day of _September_____, 19 99 .

_Jennifer Miller_____
NOTARY PUBLIC

My Commission expires: 12/17/2004

Residing at: _Meridian, Id_____

COMMISSION ACTION ON COMPLAINT: Your complaint will be assigned to an investigator. You will receive written confirmation that your complaint has been received. You may be asked to submit additional information or clarification, and you will be notified as to the final disposition of your complaint.

END

RECEIVED

SEP 29 1999

IDAHO REAL ESTATE
COMMISSION

9.    Factual allegations upon which our complaint is based.

Our complaint concerning the purchase of 2623 W. Lemhi, Boise on 6/4/99 is quite complicated. This history will have to include the entire story of how we came to purchase this property to help you fully understand why we feel that we were misled into the purchase. We believe the following detailed history will show clear violation of Duties to a Client on our Exclusive Buyer Representation Agreement (attached Document 7).

I had heard Jon Adamson's radio program "Property Line" several times, he encouraged people to set up a wealth and investment consultation with him, which I did, in early May. At this consultation he touted his Real/Pro Foundation Program called "Homes for Everyone" as the best investment with the greatest return. He claimed they had helped hundreds of families known as "Needs Families" to live the American dream of home ownership by having people like us, known as "Wealth Partners," purchase a property picked by the "Needs Family". Jon claimed this program was a "win-win" investment for all parties involved. The "Needs Families" entered into an Interim Lease with us while they lived in a property chosen by them and a Real Estate Purchase Agreement to be **exercised**, in this case, on July 31, 2002. (Please see Document 1, attached)

Jon Adamson continued to claim that the Real/Pro Foundation Program thoroughly checked out the "Needs Families" by paying $120.00 for this check to Young Mortgage Corporation. Jon Adamson told us Young Mortgage, known as a "Service Partner" was an integral part of their program and we believed that these financial background checks must be very thorough for $120.00. Our lives and finances had become an open book for the $20.00 credit check done on us by American Capital Mortgage, also referred to as a "Service Partner" by Adamson. Our involvement with this piece of property would have ended at this point if the thorough financial background check of the "Needs Family" had included so much as a phone call to their current landlord. Jon Adamson repeatedly emphasized that not only the "Needs Family's" past financial history but their current status was important. He stated that the program included only people who "had turned the corner and had cleaned up their financial act". Had a check of any kind been done on this family they would have found out that they were currently being evicted and had trashed the property they were leaving at 6307 Tahoe Dr., Boise, managed by H&H Property Management. We repeatedly asked Jerry Adamson to see this family's credit history and were always told that Kevin Ford, shown as the Selling Agent on Document 1, must have it in his briefcase or that Jerry forgot to bring it with him. We were assured that the family met the Real/Pro Foundation criteria and everything was in order. We were not shown this credit check ever, as it turns out one does not exist. In frustration, after the family moved into the property and had failed to pay the first month's rent to Jerry Adamson as agreed upon closing, I went to Realty Center's office and had the staff

open the file for me. What was found in the file was a Purchase Sales Agreement that had yet to be signed by the family and the "thorough" check by Young Mortgage, which turned out to be a short letter (see attached Document 2) generated by Tressa Johns who we find out later is Jerry Adamson's daughter, and Jon Adamson's niece. Had this information been disclosed to us and had we known the woefully limited quality of the so-called thorough background check we would have halted this purchase immediately. The information about Tressa John's relationship with the Adamsons was never divulged to us by Jerry Adamson, our Buyer Representative, Jon Adamson, the Broker or any staff member of Realty Center but was told to us by Mike Pickeren of American Capital Mortgage after this entire situation had soured.

I met with Terry Hamlin of Young Mortgage after all our problems had developed and he attempted to distance himself and Young Mortgage from Jon Adamson and associates. He stated that all they did was pull a simple credit check, nothing more, he also reported they were not paid $120.00 for this credit check. Mr. Hamlin refused to discuss Jerry or Jon Adamson or Tressa Johns.

In reality the negotiations for this purchase were going on before we had even been approved for a loan. Jerry Adamson said "in real estate, time is of the essence." Jon Adamson referred us to American Capitol Mortgage and turned us over to his brother Jerry Adamson for the nuts and bolts of the "Homes for Everyone Program." Jerry informed us that he had a "slam-dunk" investment for us. The "Needs Family" was already in their system and had been checked out and was a nice family who had a few credit problems but couldn't qualify due to recent self-employment. He stated this family had a house painting business and the husband did the painting and the wife bid the jobs. Jerry stated this family was so hard working that they were hardly ever available to meet with us. We were informed that they had already paid $1000.00 to get into the "Homes for Everyone" program. We found out much later they actually paid only $500.00, shown as earnest money on Document 1, and owed another $500.00 to the Real/Pro Foundation. This unpaid $500.00 was never paid and we only became aware of this on 6/15/99 when the "Needs Family" signed the Purchase and Interim Lease Agreement. This family had now been occupying this house since 5/15/99 and had not paid the interim rent or the rent they owed us.

When we were first shown the property we were very leery of it's location and general condition to include ceilings so low Jerry Adamson and I could barely stand up in it. Jerry Adamson, our "Exclusive Buyer Representative" and Real/Pro Foundation Vice President, convinced us that "you are not going to live here, and there are a lot more people who have to, everyone can't live where you do." He further stated that this was the home the "Needs Family" had picked for themselves with the help of Real/Pro Foundation staffer Kevin Ford.

Jerry Adamson said that since the "Needs Family" needed a place to live immediately, he was arranging for an Interim Rental Agreement with the sellers. Not knowing about their

Complaint by Doug Stewart/Kelle Watkins

current eviction problem it would appear that the "Needs family" really did want the property. In retrospect, in light of their eviction, they needed any place to live. The Interim Rental Agreement required the "Needs Family" to pay $20.00/day rent until closing. Jerry did not divulge to us that he was paying this family's interim rent and had them sign a promissory note for $180.00, which Jon Adamson showed to us at our meeting with him on 8/16/99. Jerry brought us an Addendum Interim Occupancy Agreement (see attached Document 3) dated 5/24/99, the same day as the Promissory Note was dated, we find out. This Addendum Interim Occupancy Agreement was not something we wanted to sign. This interim rental agreement, as we understood it, was between the seller, Jerry Adamson and the renters. This document seemed highly irregular to us as we believed we had nothing to do with the situation as we had not purchased the property yet. But again our "Exclusive Buyer Representative" said that the seller was demanding it and the only other option was to evict the "Needs Family." Had it been disclosed to us the "Needs Family" was not able to pay the interim rent at this time, that is exactly what should have happened and again the purchase would have been off. It is clear to us that critical facts were withheld from us and everything was done and said just to keep this deal together until closing. I have already talked to Mr. Bixler and was told Jerry Adamson was fined $3000.00 over something to do with this purchase.

Jerry Adamson was to collect the first month's rent from the "Needs Family" upon closing. After repeated calls to Jerry concerning the unpaid rent, 2 complaint calls from a neighbor and 3 encounters with the police regarding the "Needs Family" we were very frustrated. The "Needs Family", when finally paying their rent to us fourteen days late, divulged to us that Jerry Adamson had paid their interim rent. Again, this information prior to closing would have stopped us from purchasing this property.

At this point in time we realized Jerry Adamson had forced the closing from the agreed upon date of June 30, 1999 to June 4, 1999. We were confused and rushed by this early closing, and it certainly was not in our best interest to close at the first of the month rather than the end of the month. We had been informed by both Jon and Jerry Adamson that they made a point of setting all closings at the end of the month so the buyers did not have to pay all the pro-rated charges generated by a early or mid-month closing. What we now know happened was that when Jerry realized the "Needs Family" was not able to meet the $20.00/day rental obligation and had them sign a promissory note on 5/24/99 for $180.00, he put himself in the position to pay this rent until closing. We believe he pushed our closing up to get himself out of this financial situation, obviously for his best interest not ours. We were never informed of the promissory note by Jerry Adamson at any time in this process but were informed of it's existence by Jon Adamson on August 16, 1999. Had this information been disclosed to us before closing we would have never completed the purchase.

So much was made of the Real/Pro Foundation and how they would shepherd this entire process from inception to final closing, culminating with the final sale on July 31, 2002 (See Document 1) to the "Needs Family" and through a 1031 Tax Exchange turning the profit of this sale into more property sales. To date we still do not have a copy of the

3

Purchase Agreement between us and the seller. When we finally found out that nothing was as is appeared and I went to Realty Center to get documents and the help they had indicated would be there for problems--there was none. Jerry Adamson said that Kevin Ford had gone off the deep end, stolen files, beat up Jon Adamson and ransacked the office. Kevin Ford then became the scapegoat of this whole nasty situation.

To make a long story not so long, We met with Jon Adamson on August 16, 1999 in an attempt to resolve the many problems surrounding this purchase. We met in his home and went through the files on this sale to determine what went wrong. Conclusions that were drawn by ourselves and Jon that night, were that Jerry Adamson had done anything it took to close this deal. This meeting ended up being a 3 hour interrogation by Jon concerning the details of this purchase from beginning to end. At this meeting we did finally find out some critical detail not disclosed prior. Jon admitted that the files were a mess, yet did not let us look at them. He told us he would testify in our behalf, we questioned this since the Real/Pro Foundation, Realty Center, Jon Adamson, Jerry Adamson and staff were at fault for this mess not us.

Jon Adamson told us to "keep it to ourselves" that the "Needs Family" had not been checked out properly. Jon laid the blame for our problems on Kevin Ford, a staff person named Leslie and his brother Jerry Adamson. He went so far as to state that the things that were done could cause Jerry to lose his license. Jon promised to resolve this problem by 9/1/99 or "buy the property back himself" to protect his reputation. As part of the resolution of this situation we met with Jon at the property the following day, at which time he made notes and concocted what we thought would be his resolution to sell the property for us before 9/1/99. This never happened. We were informed at a later date, by Jerry Adamson, that Jon had been hospitalized and that Jon's wife had returned to the area and would be "cleaning up all the problems." Jerry stated we would be receiving a $500.00 check from them to help in all the extra expenses we had incurred with this property. Jerry had offered this sum to us previously and Jon had had a fit that Jerry had offered this to us. I had questioned earlier that $500.00 was shown as earnest money put up by the "Needs Family" shown on Document 1, the future sales agreement. Since the "Needs Family" obviously was not going to be purchasing this property, because we had to evict them, we felt this earnest money should go to us. We were informed the Real Pro Foundation received the earnest money and instead the $500.00 dollar check to us was called a gift from the Vidinnas (see attached Document 4).

We then had a meeting on 8/31/99 with Linda Adamson, Jerry Adamson and Ashley Seymoor their new broker. At that meeting we went through all the details of this case again. Jerry felt we were being "hard headed" in light of the gift of $500.00. The end result of the meeting was they would discuss our situation, without us present, and call us with a solution.

Their solution turned out to be that Ashley Seymoor would meet us at the property to look at it for himself. At that time we were informed that in his estimation this property would not qualify for FHA or VA financing. This was big news to us as the entire premise

of the future sale to the "Needs Family", at the end of our contract, was that the "Needs Family" would qualify for one of the above financing options with the 5% they would have accumulated for a down. Again this is information our "Buyer Representative" should have disclosed to us, but didn't.

After looking things over, their solution was to jack the price up to $77,000 and enter us into yet another Exclusive Representative agreement showing only conventional financing or cash as an option. They had already deceived us once and received a sales commission at our expense. We did not find this solution beneficial to us. At that time we sent them the attached letter (Document 5) dated 9/1/99. We then met with Barry Peters, attorney, who told us to write the enclosed letter dated 9/7/99 (Document 6) giving them several options. We have not heard from them so we are now proceeding with this complaint as Barry Peters suggested. We hope that what ever the Real Estate Commission does will be of help to us in resolving this problem.

All we have asked is that they undo a situation they wholly caused and profited by. We did not want this property and do not feel we should be left hanging to dispose of it at a loss. Barry Peters indicated that they have insurance to cover just this sort of self created problem.

I would be happy to come in and show you everything we have and clarify any further details. It is complicated for us and we have actually experienced this whole situation.

All of the above problems are clear violations of Duties to a Client on our Exclusive Buyer Representation Agreement.

Sincerely,

Doug Stewart and Kelle Watkins
5960 N. Linder Rd.
Meridian, ID 83642

Hm: 888-7334
Doug's wk 383-3100
Kelle's wk 887-1911



9/1/99

Doug Stewart and Kelle Watkins
5960 N. Linder Rd.
Meridian, ID 83642

Jon and Linda Adamson &
Realty Center
2419 W. State St.
Boise, ID 83702

Jon and Linda and Realty Center:

We are not encouraged by the solutions generated so far to aid us in our problem with the property at 2623 W. Lemhi, Boise. Based on our meeting of August 31 and our subsequent meetings with Ashley Seymoor it appears your only solution would be to have Ashley Seymoor attempt to sell the property for us. After our last meeting with Ashley Seymoor even he agreed this property may be difficult to sell at a price that would recoup our total financial investment.

We reiterate that all we want is to be out of this property with our total monetary investment intact. We will agree to solutions that meet that goal. We would consider options such as Jon and/or Realty Center buying the property back from us at a price that includes our incurred costs, as Jon stated he would. Another option that would meet our goal would be to go forward with the selling of the property for us by Ashley Seymoor, with the agreement that Jon and/or Realty Center make up any monetary difference between the amount of the sale of the property and what we have invested in this property.

We would welcome a discussion that would meet our need of getting out of this property whole, short of this we have not been informed of any satisfactory solutions.

We feel that every day this problem is not resolved our costs go up and so out of frustration we are reluctantly seeking legal counsel and have an appointment to discuss our situation with a real estate attorney on September 7, 1999.

If you are willing to discuss any of the suggested solutions described above, or other solutions that meet out stated goal we are more than willing to meet with you. We can be reached at phone number 888-7334.

Doug Stewart and Kelle Watkins



**EXHIBIT**

**I**

DOCUMENT # 6

September 7, 1999

4406 N. Quail Pt Ct
Boise 93703

Doug Stewart and Kelle Watkins
5960 N. Linder Road
Meridian, Idaho 83642

Linda Adamson, Real Pro Foundation
Jon Adamson, President, Founder and Broker Realty Center and Real Pro Foundation
Jerry Adamson, Assistant Vice President Brokers Staff
Ashley Seymoor, Broker
Realty Center and Real Pro Foundation, Inc.

To all the above listed parties:

As stated in our letter to you of 9/1/99 we have met with Barry Peters, real estate
attorney, and have been advised to write this letter allowing you the opportunity to rectify
our unfortunate situation. We would like to reiterate that Jon stated he was aware of the
problems stemming from his staff's handling of this matter and promised to correct this
problem situation by September 1, 1999, or "he would buy the property back from us."
We know you are also aware of our concerns as they were explained in detail to you on
8/30/99 so please be advised of the following:

In the matter of our real estate purchase of the property at 2623 W. Lemhi, Boise, Idaho
of which you acted as our broker and with whom we had a signed Exclusive Buyer
Representation Agreement we believe you to have violated your statutory fiduciary duties.
Your duties are identified by our Exclusive Buyer Representation Agreement as:

> 3. DUTIES TO A CLIENT: The brokerage and affiliated licensees
> representing a buyer are agents of the BUYER and owe the following
> duties: 1) To perform the terms of the written representation agreement.
> 2) To use reasonable skill and care. 3) To promote the best interests of
> the client in good faith, honesty and fair dealing. This includes (but is not
> limited to): a) Disclosure of any adverse material facts the agent knows
> or reasonably should have known. b) Seeking an acceptable property for
> a buyer and assisting in the negotiations.. c) For a client-buyer: by
> the seller or seller's agent, or, when appropriate, advising...the client to
> obtain professional inspections of the property or to seek appropriate tax,
> legal, and other professional counsel."

We believe you did not uphold your duties by:

-Failure to disclose the true nature of the credit check done on the Swords.

-Failure to inform us the credit check on the Swords, completed by Young Mortgage, was
done by Jerry Adamson's daughter.

page 1

EXHIBIT J

-Failure to inform us of the Sword's inability to pay for the interim rent they owed the seller.

-Failure to inform us that Jerry Adamson paid the Sword's interim rent.

-Failure to inform us that the Swords were not in compliance with the Real Pro Foundation program requirements.

-Failure to inform us the property in question most likely would not qualify for a VA or FHA mortgage because of it's shortcomings, therefore making the future sale to the Swords highly improbable. (Ashley Seymoor pointed this out upon seeing the property for the first time on 8/31/99)

-Failure to promote our best interest by manipulating a very early and unexpected closing that was not in our favor.

Due to your ethical violations of duties we have incurred a great amount of expense for a substandard property whose transaction would never have occurred if you had upheld your duties.

Expenses for this property include:

| | |
|---|---|
| Ten percent down and associated costs of closing: | $7,939.77 |
| Mortgage payments to date (August and September, $633.19/month): | $1,266.38 |
| Eviction related costs | $ 161.98 |
| Property clean-up and repairs after eviction | $ 655.00 |
| Cost to provide evidence for City Attorney for damages to property | $ 19.62 |
| Small Claims Court Costs to date | $ 65.00 |
| Re-connection of services to property | $ 15.00 |
| Subtotal | $10,740.94 |
| Gift Check from Real Pro Foundation: | $ (500.00) |
| Total cost of property and resulting problems to date: | $10,240.94 |

Note: these costs continue to grow with each passing day.

We believe you understand the serious nature of the these ethical violations and what they mean to your staff, agency and reputation and also believe you have the power to correct these problems. We feel the following solutions are fair and would agree to either solution you choose.

1. Realty Center or any above named party buys the property from us with the total incurred expenses to date included in the sale price.

2. Realty Center sells this property for us at no cost to ourselves allowing us to pay off the loan and Realty Center making up any difference between the selling price and the incurred expenses up to the date of the sale.

Please let us know, in writing, which solution you choose within 10 days of receipt of this letter. We expect the transaction you choose to be completed within 30 days from the receipt of this letter. Failure to rectify this matter in the above stated time frame or failure to respond to this letter within 10 days will force us to pursue a complaint to the Real Estate Commission. We are confident that the subsequent actions by the Real Estate Commission will establish grounds for legal action. If you satisfactorily resolve this matter in the stated time frame we will not pursue any complaint with the Real Estate Commission nor will we proceed with legal action now or in the future regarding this matter.

We are looking forward to your response and resolution of this matter.

Doug Stewart                                    Kelle Watkins

_____                    _____

Roger J. Hales    [ISB No. 3710]
Kirtlan G. Naylor   [ISB No. 3569]
HAMLIN & SASSER, P.A.
Attorneys at Law
3100 So. Vista Avenue, Suite 200
P.O. Box 16488
Boise, Idaho 83715
Telephone No. (208) 344-8474
Facsimile No. (208) 344-8479

Attorneys for Staff of the
 Idaho Real Estate Commission

ORIGINAL

# BEFORE THE IDAHO REAL ESTATE COMMISSION

| | |
|---|---|
| STAFF OF THE IDAHO REAL ESTATE COMMISSION, )<br><br>Plaintiff, )<br><br>vs. )<br><br>JON DEE ADAMSON, )<br><br>Defendant. ) | **STIPULATION** |

Kirtlan G. Naylor, of the firm Hamlin & Sasser, P.A., attorneys for the Staff of the

Idaho Real Estate Commission, and the Defendant, Jon Dee Adamson, stipulate and agree pursuant

to Rule 69 of the Rules of Practice and Procedure of the Idaho Real Estate Commission as follows:

1.      The Defendant, Jon Dee Adamson, is a licensed designated broker holding

license number DB37 for Real/Pro Inc., dba Realty Center, in Boise, Idaho, 4406 Quail Point, Boise,

Idaho 83712, and that he is subject to the jurisdiction and discipline of the Idaho Real Estate

Commission.

**STIPULATION - 1.**

EXHIBIT
K

2.     The Defendant was, at all material times to this proceeding, also the president of Real/Pro Foundation, Inc., a non-profit corporation in good standing with the State of Idaho.

3.     As designated broker, the Defendant supervised Jerel (Jerry) Adamson, a licensed real estate salesperson holding license number SP22725 for Realty Center. During such time, Jerel Adamson committed acts that resulted in a complaint being filed by the Staff of the Idaho Real Estate Commission ("Staff"), and a stipulation being entered into, a copy of which is attached hereto as Exhibit "A," and a Final Order before the Idaho Real Estate Commission dated October 15, 1999, which is attached hereto as Exhibit "B." The Defendant's actions violated Commission Rule 416.

4.     By letter dated June 16, 1999, the Staff notified the Defendant that a Complaint had been filed against him and requested response, in writing, to several questions. A copy of this letter is attached hereto as Exhibit "C." The Defendant failed to respond to this request. The Defendant's conduct violated Commission Rule 300, and Idaho Code § 54-2040A(e).

5.     A follow-up letter was sent on July 7, 1999, to Defendant again requesting additional information, which was sent certified mail with a response date of August 2, 1999. A copy of this letter is attached hereto as Exhibit "D."

6.     On July 27, 1999, the Staff attempted an audit of files at the Realty Center office. A complete audit was not possible because the Staff did not have access to the ledger cards or trust account records. While in the process of the audit, Defendant came to the office and was belligerent and demanding, "What are those assholes doing here?" He insisted that the Staff did not have an appointment to audit, were trespassing, and were to get out immediately. The Staff left the Realty Center office. Defendant's conduct violated Commission Rule 300, Rule 301, and Idaho Code §54-2040A(e).

**STIPULATION - 2.**

7.     Jon Adamson worked out a program where an agent in his office would identify a "special needs" person/family who may have had a poor recent financial past, could not qualify for a loan, but would otherwise be able to make house payments. After locating a suitable property, the agent would write a Purchase and Sale Agreement (Purchase and Sale Agreement No. 1) with a lease/option clause. The seller is not identified in this document at the time. Jon Adamson then, using a complicated analysis system, arrived at an estimated value projected several years ahead. This sales price is considerably higher than the actual listing price. Typically, the second, considerably higher, Purchase and Sale Agreement is never presented to the original seller/owner (in violation of the Rules). About the same time, another Realty Center agent, usually Jon Adamson, would identify and write the Purchase and Sale Agreement for the "Wealth Partner" to actually purchase the property. This sales price in Purchase and Sale Agreement No. 2 would be at or near the listing price. This buyer would then be the seller in the Purchase and Sale Agreement No. 1. The net effect is that the "Wealth Partner" purchases the property, even though a second Purchase and Sale Agreement exists where the Wealth Partner will become the seller with a lease option to purchase for the "special needs" person/family. This transaction would otherwise be acceptable, but for the fact that one of the Purchase and Sale Agreements is not provided to the seller.

## Middleton Transaction

8.     This subject property is located at 924 Valley Street, Middleton, Idaho. This property was listed for sale by Clark Bilyew of Cherry Lane Properties, Nampa, Idaho. This new construction property was built by Cory Barton Construction with a listing price of $74,776.00.

9.     On May 22, 1999, agents Leslie Hampton and Jerry Adamson wrote the Purchase and Sale Agreement (No. 32429) for Frank F. Preston to purchase the Middleton property.

STIPULATION - 3.

Terms included a selling price of $76,776.00 with an Addendum listing several items to be included. Exhibit "E." Exhibit "F" is another Addendum which removes the extras listed in the first Addendum, and reduces the selling price to the original listing price of $74,776.00. This Addendum was accepted by both parties on June 3, 1999.

10.     The Middleton property sold for $74,776.00, and closed June 4, 1999. Exhibit "G" is a copy of the second Purchase and Sale Agreement (No. 12658) on the Middleton property which was written by agent Kevin Ford for Steve and Danielle Yarborough on the same Middleton subject property, with a purchase price of $89,468.00 dated May 21, 1999. This Purchase and Sale Agreement was written and signed before the first Purchase and Sale Agreement was written (Exhibit"E"). The May 21, 1999, Purchase and Sale Agreement (Exhibit "G"), was never presented to the seller or his agent, a violation of Rule 202.

### Redway Transaction

11.     The subject property in this transaction is located at 2608 N. Redway, Boise, Idaho, and was listed for sale by Ron Gabriel of Century 21 Frontier, Boise, Idaho, with a listing price of $89,921.00.

12.     On June 23, 1999, agent Jerry Adamson wrote a Purchase and Sale Agreement (No. 10273) for Hugh and Dorothy Nelson to purchase the subject property for $87,000.00, with the seller paying one point and two percent of the purchase price towards closing costs (Exhibit "H"). The offer was countered with the selling price of $89,000.00, and the seller would not pay any points and agreed to pay the two percent towards the closing costs (Exhibit "I"). The counteroffer was signed by the seller on June 25, 1999, and appears to have been signed and accepted by the buyer on June 28, 1999. The subject property sold for $89,000.00 and closed July 14, 1999.

STIPULATION - 4.

13.    A Purchase and Sale Agreement (No. 7297) dated June 23, 1999, was written by Jerry Adamson for Tad and Denise Duby to purchase the subject Redway property for $106,520.00. Although this offer was written and signed on the same day as Purchase and Sale Agreement No. 10273 (Exhibit "H" above), it was never presented to the seller or the seller's agent. This action constituted a violation of Rule 202.

## Nampa Transaction

14.    The subject property in this Nampa transaction is located at 2015 4th Street, Nampa, Idaho. The owner/occupant was Larry Nowland, and the property had been foreclosed by Hopkins Financial, and they were in the process of evicting Mr. Nowland. Hopkins had contacted agent George Tallabast of RE/MAX of Nampa/Caldwell in Nampa, Idaho, to list the property at a sales price of $63,000.00. Tallabast was unable to get into the property to complete the listing, and Mr. Nowland contacted Realty Center directly and an offer was made prior to completing the listing. On April 13, 1999, agent Jerry Adamson wrote a Purchase and Sale Agreement (No. 2644) for Bob and Carmella Ritter to purchase the Nampa property for $63,000.00, with terms including the buyers to obtain conventional financing and close by May 15, 1999 (Exhibit "J"). On April 16, 1999, page 2 of Exhibit "J" was re-written to include, "Buyer acknowledges that seller does not have possession of the property and is in the process of formal eviction. Seller will assign or turnover any documents relating to the eviction proceeding upon closing, so buyer may continue the process (if not satisfied prior to closing)." This amendment was initialed by both parties (Exhibit "K"). An Addendum to the Purchase and Sale Agreement extended the closing date to May 28, 1999, and included the buyer was to deposit an additional $1,000.00 nonrefundable earnest money and accept the property "as is" and "where is" conditions.

STIPULATION - 5.

15. On April 13, 1999, a Purchase and Sale Agreement (No. 18341) was written for the Nampa subject property by agent Jerry Adamson for Larry Nowland for a purchase price of $74,668.00 (Exhibit "L"). This Purchase and Sale Agreement (No. 18341) was never presented to the seller or the seller's agent.

16. Agents Jerry Adamson, Kevin Ford, and Leslie Hampton acknowledge that the transactions detailed above demonstrate the program established by Jon Adamson, and they were instructed by him not to deviate from that program.

17. The conduct as described above violated Commission Rule 202 and Idaho Code § 54-2040A(b). Defendant's conduct as designated broker violated Commission Rule 416 in failing to supervise the sales persons.

18. The Defendant stipulates and agrees that this Stipulation shall serve as the Complaint and that execution of the Stipulation shall be deemed service upon him of a copy of the Complaint filed by the Staff of the Idaho Real Estate Commission in compliance with the rules of practice and procedure of the Idaho Real Estate Commission.

19. The Defendant is agreeing to the facts and violations of state law set forth in this Stipulation, expressly for the purpose of resolving this disciplinary action, and further acknowledges that the parties' intent is that this Stipulation be entered into for use in this proceeding before the Idaho Real Estate Commission.

20. The Defendant and Staff of the Idaho Real Estate Commission agree that the following discipline imposed for the violations set forth herein is reasonable, although not binding upon the Commission:

a. That the Commission's Order shall constitute a formal reprimand of the Defendant for the actions set forth in the Stipulation/Complaint.

b. That the Defendant be required to pay a Five Thousand Dollar ($5,000.00) civil fine in monthly payments of not less than Two Hundred Fifty Dollars ($250.00) until paid in full, with the first payment due sixty (60) days after service of the Commission's Order.

c. That the Defendant's broker's license shall be suspended for a period of three (3) years, but he will be provided a salespersons's license for that period of time.

d. That the Defendant pay the costs and attorney's fees, not to exceed Four Hundred Fifty Dollars ($450.00), to be paid within thirty (30) days of service of the Commission's Order.

21. This Stipulation is filed pursuant to the provisions of Idaho Code §§ 54-2040 and 54-2041, and is in compliance with Chapter 52, Title 67, of the Idaho Code.

22. The Idaho Real Estate Commission may act upon the allegations set forth in this Stipulation/Complaint without the necessity of further proof of the Defendant's violation.

23. The parties agree that this Stipulation may be presented to the Commission ex parte by the Staff of the Idaho Real Estate Commission, and Defendant waives any and all rights to a mitigation hearing.

24. The Defendant waives all rights under the Administrative Procedures Act and the statutes and rules of the Real Estate Commission, with regard to this administrative proceeding, pursuant to IDAPA 33.01.02.035.e.

25. The Defendant and the Staff of the Idaho Real Estate Commission agree that should the Commission fail to approve the Stipulation and proposed discipline, the Defendant and the Staff of the Idaho Real Estate Commission shall be entitled to withdraw said Stipulation and it shall have no force or affect.

**STIPULATION - 7.**

26. The Commission shall be entitled to seek an injunction or Order from the district court to enforce the provisions of the Commission's Final Order without further hearing in the event the Defendant fails to comply with the Commission's order entered pursuant to this Stipulation.

DATED this 25 day of January, 2000.

HAMLIN & SASSER, P.A.

By _____
Kirtlan G. Naylor, Of the Firm
Attorneys for Staff of the Idaho
Real Estate Commission

DATED this 4th day of FEBRUARY, 2000.

_____
Jon Dee Adamson

Adamson\5418E_04.S26

**STIPULATION - 8.**





**STATE OF IDAHO**
**REAL ESTATE COMMISSION**

MAILING ADDRESS
IDAHO REAL ESTATE COMMISSION
PO BOX 83720
BOISE ID 83720-0077
WEB SITE: http://www2.state.id.us/irec

OFFICE & EXPRESS MAIL ADDRESS
633 N 4TH ST
BOISE ID 83702
TEL: (208) 334-3285; FAX: (208) 334-2050
TRS (TELECOMMUNICATIONS
RELAY SYSTEM) 1 800 377-3529

March 13, 2000

MR JON DEE ADAMSON
REALTY CENTER
4406 QUAIL POINT
BOISE ID 83703



Dear Mr. Adamson:

Enclosed is a true copy of the Commission's Disciplinary Order which was issued after taking into consideration the information provided by the Staff of the Idaho Real Estate Commission at the hearing held February 18, 2000.

Basically, the Disciplinary Order provides for the following:

1.  You are given a formal reprimand for your actions.

2.  You are required to pay a civil fine of $5000, in monthly payments of not less than $250, with the first payment due and payable sixty (60) days from service of this Final Order.

3.  You are required to pay the costs and attorney's fees in an amount not to exceed $450 within thirty (30) days from service of this Final Order. The actual amount of the costs and attorney's fees was $523.16.

4.  Your real estate broker's license is suspended for a period of three (3) years from the date of service of this Final Order. You will need to send your old license back to the Commission and a salesperson's license will be issued to you.

**EXHIBIT L**

Mr. Jon Dee Adamson
March 13, 2000
Page 2

Please refer to the Final Order for specific details. If you have any questions, please contact me
or Terry Ruettgers, Chief Investigator, at the Commission office.

Sincerely,

Executive Director

DJ:TJR:sm

Encls: True copy of Final Order
        Copy of Memorandum or Cost and Attorney's Fees

Copy to Ashley Seymour, broker

CERTIFIED MAIL # P 294 676 484

## BEFORE THE IDAHO REAL ESTATE COMMISSION

STAFF OF THE IDAHO REAL )
ESTATE COMMISSION, )
                    )
        PLAINTIFF, )
                    )
vs. )     **FINAL ORDER**
                    )
JON DEE ADAMSON, )
                    )
        DEFENDANT. )     COPY
_____)

    THIS MATTER, having come for consideration before the Idaho Real Estate Commission at a hearing on February 18, 2000 in Boise, Idaho pursuant to the Stipulation/Complaint entered herein, and the Commission having considered the evidence in this matter. The Commission approves and incorporates by this reference the Stipulation/Complaint filed herein by the Parties and the facts and the violations admitted therein as its Findings of Facts and Conclusions of Law. NOW THEREFORE, IT IS HEREBY ORDERED, as follows:

1.    This Final Order shall constitute an official and formal reprimand of Jon Dee Adamson for his conduct as set forth in the Stipulation/Complaint.

2.    You are required to pay a civil fine of FIVE THOUSAND DOLLARS ($5,000.00), in monthly payments of not less than TWO HUNDRED FIFTY DOLLARS ($250) until paid in full with the first payment due sixty (60) days from date of service of the Final Order.

**FINAL ORDER - 1**

3.  You are required to pay the costs and attorney's fees incurred by the Idaho Real Estate Commission for the investigation and administrative proceedings undertaken in this matter in an amount not to exceed FOUR HUNDRED FIFTY DOLLARS ($450.00) within thirty (30) day of service of the Commission's Final Order.

4.  That your real estate broker's license is suspended for a period of three (3) years from the date of service of the Final Order, but you will be provided a salesperson's license for that period of time provided the license is renewed in a timely manner.

5.  (A) This is a Final Order of the agency. Any party may file a motion for reconsideration of this Final Order within fourteen (14) days of the service of this Final Order. The agency will dispose of the petition for reconsideration within twenty-one (21) days of its receipt, or petition will be considered denied by operation of law. See section 67-5246, Idaho Code.

    (B) Pursuant to sections 67-5270 and 67-5272, Idaho Code, any party aggrieved by this Final Order or Orders previously issued in this case may appeal this Final Order and all previously issued Orders in this case to district court by filing a petition in the district court of the county in which:

    (i)   A hearing was held;

    (ii)  The final agency action was taken, or:

    (iii) The party seeking review of the Order resides, or operates its principal place of business in Idaho.

    (C) An appeal must be filed within twenty-eight (28) days: (a) of the service date

FINAL ORDER - 2

of this Final Order; (b) of any Order denying petition for reconsideration; or (c) of the failure within twenty-one (21) days to grant or deny a petition for reconsideration whichever is later. See section 67-5273 Idaho Code. The filing of an appeal to district court does not stay the effectiveness or enforcement of the Order under appeal.

7.   The Executive Director of the Idaho Real Estate Commission shall cause a true and correct copy of this Final Order to be served on the Defendant by mailing a copy to the Defendant at his address by certified mail, return receipt requested.

DATED this 13th day of February, 2000.

COMMISSIONERS:



(s) Manuel Gutierez
Manuel Gutierez, Chairperson


(s) Robert D. Jones
Robert D. Jones, Vice Chairperson


(s) Ronald L. Clawson
Ronald L. Clawson


(s) Diane G. Duncan
Diane G. Duncan

**FINAL ORDER - 3**

# CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of March ,2000, I caused to be served, by the method(s) indicated, a true and correct copy of the foregoing upon:

Jon Dee Adamson
Realty Center Inc.
4406 Quail Point
Boise, ID 83703

    X  Certified Mail
   _____ U.S. Mail
   _____ Hand Delivery
   _____ Facsimile Transmission

Kirt Naylor
Attorney at Law
Hamlin & Sasser PA
PO Box 16488
Boise, ID 83715

   _____ Certified Mail
    X  U.S. Mail
   _____ Hand Delivery
   _____ Facsimile Transmission

Donna M. Jones
Executive Director
Idaho Real Estate Commission

## CERTIFICATION

I hereby certify that this is a true & correct copy of the original document on file at the office of the Idaho Real Estate Commission.

Dated this_____ day of_____ 20_____

# DISCIPLINARY ORDER

**Adamson, Jon Dee**, formerly the designated broker for Realty Center in Boise, Idaho. Stipulated to violations of section 54-2040A(e) Idaho Code, and rule 300 and 301, failure to respond to Commission's reasonable requests; rule 202, failure to present offers; section 54-2040A(b), continued course of misrepresentation; and rule 416, failure to supervise salespersons. Given a formal reprimand; real estate broker's license suspended for three (3) years, and issued a salesperson's license; ordered to pay a $5000 civil fine and costs and attorney's fees.

Date of Final Order: 2/18/00
Date of Service: 3/13/00

