Michael W. Moore (ISBN 1919)
MOORE & BASKIN, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031

Attorneys for Defendant Clarendon National Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WARREN M. FARNWORTH, | ) Case No: 05-021-S-BLW |
| | ) |
| Plaintiff, | ) **CLARENDON'S REPLY TO** |
| | ) **PLAINTIFF'S RESPONSE TO** |
| vs. | ) **MOTION FOR SUMMARY** |
| | ) **JUDGMENT** |
| CLARENDON NATIONAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**A.      Farnworth's Waivers.**

Nowhere in the Farnworth Response Brief (Dkt. No.26) or in his Statement of Material Facts in Dispute (Dkt. No.29) is there mention, let alone disagreement, with any of the following propositions set forth by Clarendon in its opening summary judgement materials:

      1.      The Homes for Everyone Program is an "investment contract" type security (Memorandum in Support of Summary Judgment (Docket No. ) at pp. 3 - 9);

      2.      The Homes for Everyone Program violated the Idaho and federal securities laws *(id.,* at pp. 9-11);

      3.      The Frontier Insurance Policy specifically excludes claims "arising out of any violation of the Securities Act of 1933, as amended or the Securities Exchange Act of 1934, as amended by any State Blue Sky or Securities Law or similar state or federal statutes . . .." (Moore Aff. (Docket No. 16) Exh. A, at p. 8, exclusion (I));

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 1

4.  The Frontier Insurance Policy contains a "No-Settlement" clause, which provides: "The insured shall not admit any liability, make any payment, assume any obligation, or incur any expense related to such claim or suit except with prior written consent of the company." (id., at p. 7, section 11);

5.  No effort was made to contact Clarendon concerning the initial September 1, 2004 offer or seek its permission with regard to the settlement between Mr. Adamson and Mr. Farnworth (Collaer Aff. (Docket No. 12) at paragraphs 6 and 90);

6.  The Property/Casualty Reinsurance Endorsement between Clarendon and Frontier specifically made Clarendon's responsibilities under that endorsement "subject always to the other terms of the policy." (Moore Aff. Exh. D); and

7.  Clarendon contractually has the right to deny coverage pursuant to the security law violation exclusion and the no settlement clause.

Federal Rule of Civil Procedure 56(d) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse parties response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Under this Court's rules, the Responding Party's response brief "must contain all of the reasons and points and authorities relied upon by the responding party." Local Rule 7.l(c)(3). "In the event an adverse party fails to file any response documents required to be filed under this rule in a timely manner, such failure may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application." Local Rule 7.1(f). This District has held that failure to respond to a moving party's points and authorities constitutes an admission. *Flores, et al. v. Young, et al.*, case No. CV 05-110-S-EJL, United States District Court for the District of Idaho, Honorable Edward Lodge, July 8, 2005. The above points must be deemed conceded.

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 2

**B.    Clarendon Does Not Have A Duty To Indemnify Adamson.**

Rather than respond to Clarendon's argument that there is no coverage under the Frontier policy and thus no responsibility for Clarendon to pay the Adamson stipulated judgment, Farnworth argues that Clarendon breached its own duty to defend Jon Adamson/Real Pro, Inc. and, as a result, has forfeited any right to deny an alleged duty to indemnify. (Response Brief at pp. 4 - 9.) This argument fails both because Clarendon did not have an independent duty to defend Mr. Adamson, and because any such alleged breach of the duty to defend does not preclude Clarendon from enforcing the express terms of the insurance contract.

**1. Clarendon breached no independent duty to defend Jon Adamson/Real Pro.**

An insurer's obligation to undertake the defense of a lawsuit is not triggered until the insured tenders the defense of the third party lawsuit to the insurer. *Hartford Accident and Indemnity Co. v. Gulf Insurance* Co., 776 F.2d 1380, 1383 (7th Cir. 1985) (Illinois law); *Icasiano v. Allstate Ins. Co.,* 103 F.Supp.2d 1187, 1191 (N.D.Cal. 2000); *Grindheim v. Safeco Ins. Co. Of America,* 908 F.Supp. 794, 798 (D.Mont. 1995); *Oregon Insurance Guarantee Association v. Thompson,* 93 Or.App. 5, 11, 760 P.2d 890, 893 (1998); *Time Oil Co. v. Cigna Property & Cas. Ins. Co.,* 743 F.Supp. 1400, 1420 (W.D. Wash. 1990); *Erie Ins. Exchange v. Virgin Islands Enterprises,* 264 F.Supp.2d 261 (D. Virgin Islands 2003).   An insurer is not obligated to defend any action not tendered to it. *Oregon Insurance Guarantee Association v. Thompson, supra*, p. 893.   In this instance the policy specifically requires that such a tender be in writing. (Aff. of Moore, Exh. A, p. 6.)  In such a situation the tender of defense by the insured to the carrier must be in writing. *Arnette Optic Illusions v. ITT Hartford Group*, 43 F. Supp.2d 1088, 1098 (C.D. Cal. 1998).

Typically, litigation regarding insurance coverage involves situations where a defense has been tendered and the insurer decides not to defend the insured. *Erie Ins. Exchange,* 264 F.Supp.2d at 264. Such is not the case here. The issue here is whether the insured ever tendered the defense of this case to <u>Clarendon.</u> The record is clear that no written tender of defense was <u>ever</u> made to Clarendon.

The Farnworth lawsuit was filed in April of 2001. (Supp. SMF ¶ 2.) At that time John Adamson and Real Pro were insured under the Frontier policy. The record is clear that they submitted the lawsuit for defense by Frontier. (*Ibid.*) Frontier wrote back indicating to Jon Adamson, Leslie Hampton and Jerel Adamson that Frontier was retaining counsel to defend them, and, explaining that the Farnworth lawsuit was a claim that was the same or related to Stewart/Watkins and was being defended on that basis. (Supp. SMF ¶ 3). Pursuant to the <u>specific request</u> of Mr. Adamson/Real Pro, Frontier retained Phil Collaer to provide that defense. (*Ibid.*) At no time did Mr. Adamson or Real/Pro tender the defense of this case to Clarendon.

Plaintiff's Statement of Facts and brief mischaracterize the events in the spring of 2002 surrounding the closure of Frontier's Louisville office run by RISC following the October 2001 New York Rehabilitation Order. The record is clear that prior to October 2001 the RISC/Louisville office handled <u>all</u> of Frontier's real estate claims. When that office closed in the spring of 2002, it forwarded various files to Frontier in New York and to Clarendon's adjustment company, North American Risk Services ("NARS"), in Florida. (Supp. SMF ¶¶ 4-5). NARS employee Harry Keith reviewed the files received by NARS from RISC to determine if the correct files had been sent to Clarendon. (Supp. SMF ¶¶ 5 and 6; Keith Aff. ¶¶ 2and 3 and Exh. 1). Mr. Keith's review found that several files sent by RISC/Frontier were files Frontier had previously identified as pre-cut through

files, which appeared to have been mistakenly sent to NARS. (*Ibid.*) Keith wrote a memo dated April 28, 2002 identifying the involved files, (Supp. SMF ¶ 5) which were thereafter forwarded to Frontier in New York. (Supp. SMF ¶ 7. and Exh. 2).

In June 2002 NARS received a copy of a new Idaho lawsuit, the Duesman lawsuit. (Supp. SMF ¶ 7). This lawsuit stemmed out of the "Homes for Everyone" program and mirrored Stewart/Watkins and Farnworth. Mr. Keith called Frontier adjuster Nick Estabrook in New York and documented the call in a letter dated June 22, 2002. (Supp. SMF, Exh. 6; Supp. Keith Aff. Exh. 2). In the letter, Mr. Keith reminded Mr. Estabrook that NARS had sent various files (including Farnworth) back to Frontier that spring because Frontier determined the date of loss was prior to the effective date of the cut through endorsement. Keith indicated that a new lawsuit called Duesman had been received and it should have the same date of loss as Farnworth because it involved substantially the same allegations as in Farnworth and Frontier had previously determined that the Farnworth claim had the same date of loss as the Stewart/Watkins claim. (*Ibid.*).

Frontier thereafter defended Duesman and settled it in 2003. (Supp. SMF ¶7). Frontier defended the Farnworth case from the inception of service of process in 2001 through August of 2004. The Adamson defense in Farnworth was handled by the lawyer requested by Adamson, Phil Collaer.[1] Mr. Collaer's defense was thorough and within the standard of practice in our community. (Supp. Moore Aff. Exh. 8 - Collaer depo. p. 22). The defense continued through September 2, 2004,

---

[1] Frontier's letters to its insureds document that it was defending the case as a pre-cut through claim. (Supp. SMF ¶ 3). (See Moore Aff. Exh. SS p. 1; Johnson Aff. Exh 2 p. 24). Mr. Collaer's affidavit confirms his understanding to the same effect. Plaintiff challenges Collaer's affidavit saying that Mr. Collaer has acknowledged in his deposition that he has not researched the issue and was not offering an opinion. (Plaintiff's Supp. Brief, Dkt. No. 34, p. 2). Mr. Collaer's affidavit is properly before the Court. Mr. Collaer addressed his understanding based on his dealings and communication with Frontier that the defense was being provided by Frontier as outlined. (Johnson Supp. Aff., Exh. G - Collaer depo., pp. 15-17).

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 5

when Mr. Collaer filed a motion to withdraw, heard the next day at the same hearing in which Plaintiff sought a judgment on the basis of the settlement and covenant not to execute with the insured. There is no showing that Clarendon was ever made aware of these circumstances nor was there any showing that at any time Clarendon was tendered the defense of this case by the insured as required to activate any specific obligation to defend.

A similar situation appears to have arisen in the case of *Hartford Acc. & Indem. Co. v. Gulf Ins. Co.,* 776 F.2d 1380 (7th Cir. 1985), a wrongful death action filed against the City of Peoria ("City") and the Peoria Park District ("Park District"). The City and the Park District had entered into a maintenance agreement under which the Park District would trim or remove trees the City determined dangerous. The City had primary insurance through Hartford. The Park District had its coverage through Gulf. The Park District also secured additional coverage through an endorsement issued by Gulf naming the City as an additional insured to cover liability under the maintenance agreement.

On receipt of the lawsuit the City tendered its defense to Hartford which undertook that defense. The Park District was defended by Gulf. Ten months into the lawsuit an attorney for Hartford on his own initiative wrote a letter asking that Gulf assume the defense of the city. Gulf declined. After the case was settled, Hartford sued Gulf contending that Gulf had breached its duty to defend the City and was therefore liable for the settlement paid by Hartford. Rejecting these claims the court instructed:

> Nor can the tender requirement be said to be satisfied because Gulf knew of the suit from the outset as the Park District's insurer. Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired. *See Solo Cup v. Federal Insurance Co.,* 619 F.2d

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 6

> 1178, 1183 (7th Cir. 1980). An insurance company is not required to intermeddle officiously where its services have not been requested. *Cf. Oda v. Highway Insurance Co.*, 44 Ill. App.2d 235, 253, 194 N.E.2d 489, 499 (1963) (insurance company need not become "intermeddler in the contests of others").
>
> Because the City of Peoria never tendered its defense in the Lovell suit to Gulf, Gulf had no duty to defend and there was no occasion to apply the principle of estoppel.

*Hartford*, 776 F.2d at 1383-1384. *See also, Eric Insurance Exchange, supra* 264 F.Supp.2d at 264 (both knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired are required.)

From the moment that summons and complaint was served in *Farnworth*, the case was defended by Frontier. Frontier did so having made its own determination that the claim predated the Clarendon endorsement. Frontier confirmed that conclusion with the insured in writing at the outset of its defense in 2001. (Supp. SMF ¶ 3; Moore Aff. Exh. SS). At no time did the insured request that Clarendon undertake the defense of this case, let alone make a written tender of defense to Clarendon. Prior to September 2, 2004, and up to the moment of the settlement agreement between Adamson and Farnworth, complete defense was fully provided by defense counsel Phil Collaer. No effort was made to notify Clarendon of either the withdrawal of defense by attorney Collaer on September 2, 2004 or the settlement agreement the next day. No effort was made to contact Clarendon and request that they undertake the defense. Clarendon breached no duty to defend.

   **2.  Clarendon is not estopped from enforcing the insurance contract exclusions**.

Clarendon agrees with Mr. Farnworth that "the duty of an insurer to defend, for the protection of the insured, is a <u>separate, unrelated</u> and broader obligation than a duty to pay for damages under the insurance policy." *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 798,

683 P.2d 440 (Ct. App. 1984) (underlined emphasis added). Clarendon rejects the Farnworth argument that a breach of the separate and unrelated duty to defend estoppes Clarendon from enforcing the express terms of the insurance contract with the insured.

Plaintiff relies on *Hirst, supra. Hirst,* a medical malpractice case, is directly on point. Plaintiff Hirst was drugged and sexually assaulted by his physician on several occasions. After Hirst filed suit alleging negligence and professional malpractice, the physician asked his malpractice insurer, St. Paul Fire & Marine Insurance Company, to defend. St. Paul refused. Subsequently, the physician admitted that he had committed various acts of medical or professional malpractice and settled with Hirst, consenting to a $90,000 judgment and assigning to Hirst all of his causes of action arising out of St. Paul's failure to appear and defend in exchange for Hirst's agreement not to execute. Hirst then brought suit against St. Paul to enforce the judgment. St. Paul moved for summary judgement on the grounds that its insurance contract with the physician did not cover his alleged and admitted acts since they did not constitute "providing or withholding of professional services." The district court granted partial summary judgment to St. Paul on the duty to indemnify since the alleged acts were not covered by the terms of the policy as a matter of law. However, the district court held that St. Paul was liable for the attorney fees incurred by the physician because it breached its separate duty to defend. The parties cross appealed.

In an oft cited decision the Idaho Court of Appeals affirmed. First, the Court of Appeals held that "professional services" under the insurance contract did not include intentional sexual assault, and thus were not covered by the policy. 106 Idaho at 444. Next, the Court of Appeals examined St. Paul's duty to defend, finding that Hirst's complaint, broadly read, implicated coverage under the insurance contract and thus St. Paul breached its duty to defend the physician. However, the Court

of Appeals rejected Hirst's argument that the breach of the duty to defend obligated St. Paul to pay the consent judgment.

> We question the propriety of utilizing a form of estoppel as a punitive measure against an insurer for breach of a contractual duty to defend. Rather, we believe the sanctions for that breach should be governed by ordinary principles of contract law. In Idaho, the purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party.

106 Idaho at 447; *see also, Black v. Fireman's Fund American Ins.,* 115 Idaho 449, 454*,* 767 P.2d 824 (Ct. App. 1989) (reversing trial court's award of damages against Fireman's Fund, despite breach of duty to defend, where policy excluded coverage).

Farnworth relies on *Esterovich v. City of Kellogg,* 139 Idaho 439, 80 P.3d 1040 (2003), the Idaho Supreme Court's most recent pronouncement on the subject. *Esterovich* does not help Farnworth.

In *Esterovich,* the City of Kellogg was sued for personal injuries incurred when two individuals inhaled chemicals that the city had pumped into its sewer system. The city tendered the lawsuit to its insurer which refused to provide a defense on the grounds of a pollution exclusion. The city then filed a third party complaint against its insurer to determine the coverage issues. The city subsequent admitted liability and assigned all its claims and causes of action against its insurer to the plaintiffs, leaving open only the amount of damages. While this was occurring, the insurer filed for summary judgment against the city on the coverage issues which the district court denied, <u>finding coverage</u>. The trial court denied the insurer's request to participate in the damages phase, awarded the plaintiffs damages, and entered judgement. The insurer appealed, arguing that it had a right to participate in the damages hearing.

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 9

The Supreme Court held that due to the procedural posture of the case, the insurer had the right to participate in the damages phase of the trial. The Supreme Court once again held that "[a]n insurer's duty to defend and indemnify are <u>separate duties</u>." 139 Idaho at 442 (emphasis added). The Supreme Court then explained the relationship between these two separate duties.

> If the insurer breaches its duty to defend and the insured settles a claim <u>covered by the policy</u>, the insurer has a duty to indemnify its insured for the amount of that settlement so long as a potential liability for the insured existed which resulted in a reasonable settlement in view of the size of possible recovery and the probability of the claimant's success against the insured.

*Id.* (underlined emphasis added). The Supreme Court held that the insurer was liable for the Plaintiffs' damages up to the policy limits because both the city had admitted liability <u>and the district court</u> <u>had ruled there was coverage</u>. *Id.*

Clarendon does not seek to re-litigate the issue of whether Mr. Adamson is liable to Mr. Farnworth. *City of Idaho Falls v. Home Indemnity Co.,* 126 Idaho 604,610, 888 P.2d 383 (1995)("An insurer is not entitled to re-litigate an underlying action following a settlement.").[2] However, Clarendon is liable to Mr. Farnworth only if there is coverage for the acts of Mr. Adamson. The insurance contract with Mr. Adamson specifically excludes coverage for security law violations and mandates that the insurer agree to any settlement. As Mr. Adamson's assignee, Mr. Farnworth can have no greater rights under the insurance contract. *Hartman v. United Heritage Prop. & Cas. Co.,* ____ Idaho ____, 108 P.2d 340 (2005). There is no coverage, hence no recovery. To rule otherwise would, in effect, rewrite the insurance contract.

**C.     The subject claim against the insureds arose prior to the May 2000 Clarendon Endorsement.**

---

[2]In *Home Indemnity*, the trial court granted partial summary judgment against the insurer on the coverage issue, which the Idaho Supreme Court affirmed. 126 Idaho at 608.

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 10

Both sides have acknowledged the limited liability section of the Frontier policy. The policy provides: "All claims arising out of the same or related errors, omissions, or negligent acts will be deemed to have been made when the first of such claims is made." (Moore Aff., Exh. A, policy p. 3). In this instance the claims against the insureds concern the insureds' investment "Homes for Everyone" program. Several claimants made claim, the first of which was Stewart/Watkins. The Stewart/Watkins demand letter of September 1999 is clearly a "written claim" as defined by the policy. *Ibid.* p. 2. The allegations brought against the insureds against Stewart/Watkins mirrored that brought by Farnworth.[3]

Plaintiff mistakenly argues that because the Farnworth transactions involved a different house with a different person that they are not the "same or related." The problem with Plaintiff's position is that the language of the policy concerning <u>same or related</u> pertains to the <u>conduct</u> of the Defendant insureds. In this instance, the Defendant's conduct with regards to the Homes for Everyone program as to both Stewart/Watkins and Farnworth were clearly the same or related.

A similar situation was presented to the Eleventh Circuit Court of Appeals in *Continental Casualty Co. v. Wendt*, 205 F.3d 1258 (11th Cir. 2000). *Wendt* involved K.D. Trinh, a Canadian federal corporation that was selling promissory notes to investors through agents, including Defendant Wendt. Defendant Hall was an attorney who promoted the sale of the notes issued by

---

[3] See generally, SMF at pp. 9-15 (Dkt. No. 12-3). Compare the 9/7/99 Stewart/Watkins demand letter (Moore Aff., Exh. J) and the Stewart/Watkins Complaint (Moore Aff., Exh. M) with the Farnworth Complaint (Moore Aff., Exh. R). The two complaints involve common defendants, mirror general factual claims, make the same legal theories, and are represented by the same counsel. Even the exhibits to the Complaint are largely identical including the Homes for Everyone truth journal and the IREC investigation, stipulation and order related materials.

Trinh and provided legal services regarding various aspects of the transactions. Hall had two different policies, one issued in 1996 and a second in 1997. Any claim or claims arising out of the same or related wrongful acts were considered to be first made during the policy term in which the earliest claim arose. In 1996 litigation was filed against Hall, Wendt and others by multiple defendants which the court referred to as the "Cowan litigation." Hall was sued for giving inaccurate legal advice and for making false and misleading statements regarding the Trinh investments as security by multiple investors. This 1996 litigation was settled. In August 1997 a second lawsuit was brought by different investors. These investors sought damages for fraudulent and misleading representations concerning the same investment program. The Eleventh Circuit recognized that the inquiry focused on the conduct of the defendant insured not the plaintiffs. The court rejected plaintiff's suggestion that the term "related" was ambiguous.[4] The court instructed:

> The plain meaning of the word "relate" is "to show or establish a logical or causal connection between." Applying the common meaning of the word to the facts of this case, the court finds that Hall's acts, which formed the basis for the first suit, "relate" or have a "logical connection" in any "meaningful sense of the word" to those which form the basis of the third party complaint filed against him by Wendt in 1997.
> . . .
> It is clear that Hall's course of conduct encouraged investment in the K.D. Trinh's notes. Though clearly this course of conduct involved different types of acts, these acts were tied together because all were aimed at a single particular goal. The fact that these acts resulted in a number of different harms to different persons, who may have different types of causes of action against Hall does not render the "wrongful acts" themselves to be "unrelated" for the purposes of the insurance contract. Rather, they comprised a single course of conduct designed to promote investment in K.D. Trinh. It is the same course of conduct which serves as the basis for both the Cowan and Wendt litigation. The conduct at issue in both cases was arguably the

---

[4] The *Wendt* court applied the same insurance policy construction concepts applied by our Idaho Supreme Court. Compare *Continental Casualty Co. v. Wendt*, 205 F.3d at 1262-3 with *Mutual of Enumclaw v. Harvey*, 115 Idaho 1009, 772 P.2d 216 (1989) and, the decision cited by Plaintiff's in their brief, *Nedrow v. Unigard Sec. Ins. Co.*, 132 Idaho 421, 974 P.2d 67 (1998). *See also, American Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 94 P.3d 699 (2004) (applying the same construction rules).

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 12

> "same" and at the very least "related" in any common sense understanding of the word.

205 F.3d at 1264.

The same result was reached in *Gateway Group Advantage, Inc. v. McCarthy*, 300 F. Supp.2d 236 (D. Mass. 2003). There, dealing with the multi state sale of insurance franchises to be operated in Sam's Club stores the court stated:

> . . . IHA engaged in a "single course of conduct designed to promote investment" in the franchise program. *Id.* The fact that the sales pitch was made to different people over time, and that the franchises were located in different states, does not render the wrongful acts unrelated. Rather, like in *Wendt*, the conduct at issue in both the Illinois and Missouri claims "was arguably 'the same' and at the very least 'related' in any common sense understanding of the word."

300 F. Supp.2d at 245. *See also, Gregory v. Home Insurance*, 876 F.2d 602 (7th Cir. 1989).

Like the facts in *Wendt, Gateway and Gregory*, the Stewart/Watkins and Farnworth allegations arose out of the same acts of the Defendants. If not the same acts, they were certainly arising out of the same or <u>related</u> acts. As a result of the Frontier policy's language the Farnworth allegations predate the May 2000 Clarendon Endorsement.

**D.     Clarendon is not Frontier's Errors and Omissions carrier.**

Plaintiff argues inferentially that Clarendon is liable for the Farnworth settlement because of Frontier's alleged breach of its duty to defend.[5] Plaintiff, citing the specific terms of the Clarendon Endorsement, argues that Clarendon agreed to . . .

---

[5] In its summary judgment motion Clarendon contends that even if one were to assume Frontier breached its duty to defend, that Clarendon would not be liable for Frontier's conduct as Clarendon is not Frontier's Errors and Omissions carrier. (Clarendon Memorandum at p. 17). In so stating, Clarendon does <u>not</u> admit that Frontier breached its duty to defend. Delays in paying a defense lawyer's bill is not a complete breach of the duty to defend. At this juncture no motion has been filed by Plaintiff on that issue and that issue is not currently before the Court.

CLARENDON'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION
FOR SUMMARY JUDGMENT - page 13

> . . . <u>become liable for 100 % of any loss payable by the Company (Frontier) under the policy</u>, not to exceed policy limits, to which this endorsement is attached, and Clarendon will make payment thereof directly to the named insured shown above in the event of first party coverages, or directly to the claimant or claimants to whom the named insured is legally liable, in the event of third party coverages, subject always to the other terms of the policy.

(Response Brief at p. 6) (emphasis added). Restricting its citation to only the underscored language, Plaintiff argued that Frontier's breach of its own duty to defend is a "loss payable" by Frontier under the policy. (*Ibid.*).

Under the Endorsement, the language "any loss payable by the company under the policy, is modified by the terms that follow thereafter. The endorsement states that the loss payable is not to "exceed the policy limits" and is a payment that is made either to the named insured under a first party coverage or under a third party coverage. The term "loss payable" clearly refers to claims falling within the coverage of the policy. It does not involve claims handling issues leading to the contention that Frontier breached its duty to defend as though Clarendon is an Errors and Omissions carrier of Frontier. Any liability that Clarendon has under the endorsement is expressly limited as being . . . "subject always to the terms of the policy". Plaintiff's argument must be rejected.

One in the position of a reinsurer is not liable for such liabilities of the reinsured. *See e.g. Couch on Insurance* 3d, Section 9:29. In other words, a reinsurer will not be liable for the improper claims handling practices of the original insurer. *See Employers Reinsurance Corp. v. American Fidelity and Casualty Company*, 196 F. Supp. 553, 561 (W. Dist. Mo. 1959). In *Employers Reinsurance Corp., supra*, the court held that in the absence of a treaty provision expressly providing coverage for such claims handling, a reinsurer is not liable for the resulting liabilities of its ceding insurer. *Id.* Otherwise, the risk assumed under the contract would exceed the boundaries of the

nature of reinsurance which are defined and circumscribed by the risk covered in the primary insurer's policy with its own insured.  Here, the Property/Casualty Reinsurance Endorsement does not specifically provide coverage for any such liability.  Plaintiff's argument must be rejected.

DATED this 5th day of December, 2005.

                MOORE & BASKIN, LLP


        By: _____/s/_____
                Michael W. Moore, of the firm
                Attorneys for Defendant
                Clarendon National Insurance Company

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY That on this 5th day of December 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

        T.J. Angstman
        tj@angstman.com

        Wyatt B. Johnson
        wyatt@angstman.com

        mindy@angstman.com


                            _____/s/_____
                            Michael W. Moore